The Honorable Gary D. Hunter State Senator 145 Spring Lake Drive Mountain Home, AR 72653-5478
Dear Senator Hunter:
I am writing in response to your request for an opinion on the following question concerning health insurance plans for public school employees:
 If a school district allows its staff to switch to an individual health plan and still wants to contribute funds toward those policies, will that district lose any part of its funding?
As I understand your question, you are focusing upon the possible consequence, as a funding matter, of a school district's decision to contribute toward individual health insurance plans for its employees. You appear to concede in your correspondence that state law does not contemplate school districts contributing toward employees' health insurance premiums.
RESPONSE
It must be initially emphasized in addressing this question that state law in my opinion contemplates only one publicly sponsored public school employee health insurance program, and that is the one instituted pursuant to § 21-5-401 et seq., which created the State and Public School Life and Health Insurance Board to set policy and select plans and coverages for such a program. See A.C.A. § 21-5-401 (1) (Supp. 2001). I have previously opined in this regard that it would be contrary to the legislative intent expressed in A.C.A. § 21-5-401 for school districts to seek their own health insurance coverage. Op. Att'y Gen. 99-028. I have enclosed that opinion for your review.
It is therefore my opinion that a school district would subject itself to a legal challenge if it acted as contemplated in your correspondence and contributed funds toward individual health insurance policies. In response to your specific question regarding loss of funding, I have found no provision of law that would dictate an automatic loss of funds for a school district in the event school employees switched to individual plans and the district contributed toward those plans. This is not to suggest, however, that the district's action would be lawful. To the contrary, I believe such action would likely be found contrary to state law, and could potentially violate A.C.A. 21-5-405 (b) (3) (B) (Supp. 2001), which provides in relevant part as follows:
 Any state agency or school district that accepts state funds intended to partially defray the cost of health insurance for the employees of the state and public schools shall use those funds only for the state employee and public school personnel health benefit plans sponsored by the board. . . .
Identifying the "state funds" referenced in this provision is complicated by the fact that beginning in 1995, the state no longer specifically appropriates funds for the payment of school district health insurance contributions. See Little Rock School District v. ServicemasterManagement Services, et al., 148 F.3d 956, 965 (8th Cir. 1998) (noting that the former system of school funding "provided for direct payment by the State of [contributions for teacher retirement and employees' healthinsurance]," citing Act 34 of 1983 (Ex. Sess.)). (Emphasis added). According to the Eighth Circuit Court of Appeals, the formerly earmarked funds have been "folded into the over-all Equalization Funding system" under the new system of school funding. Id. at 963. While it may therefore be difficult to identify discrete funds for purposes of A.C.A. § 21-5-405 (b) (3) (B), supra, any use of equalization aid to fund health insurance plans other than those sponsored by the State and Public School Life and Health Insurance Board would, following the federal court's analysis of the new system of school funding, violate this Code section. Because any misuse of state funds could lead to a taxpayer lawsuit (seegenerally Ark. Const. art. 16, § 13, proscribing "illegal exactions"), the source of the district's contribution toward individual health insurance plans is an additional factor to be considered by a district that is contemplating this action.
In light of the above, it is my opinion that a school district should proceed with extreme caution with any plans to contribute its funds toward employees' individual health insurance policies. The absence of an explicit penalty or automatic funding reduction should not be interpreted as a sign of the state's approval of any such plans. Accordingly, I believe it would be advisable for a district to consult local counsel when considering this matter.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:EAW/cyh